# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LISA A. GREGORY,                          )
                                          )
                Plaintiff,        )
                                          )
             v.                )       1:15CV996
                                          )
MONTE BRUCE, et al.,                      )
                                          )
                Defendants.       )

## ORDER, MEMORANDUM OPINION AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court upon several motions including: Defendant Penske Truck Leasing Company's ("Penske") motion to dismiss (Docket Entry 6), Defendant Monte Bruce's ("Mr. Bruce") motion to dismiss (Docket Entry 10), Plaintiff Lisa A. Gregory's motion to remand to state court (Docket Entry 17), Penske's motion for protective order (Docket Entry 31) and Mr. Bruce's motion for protective order (Docket Entry 33). All matters are ripe for disposition. For the reasons stated below, the court will recommend that Penske's motion to dismiss be granted (Docket Entry 6), Monte Bruce's motion to dismiss be granted (Docket Entry 10) and, Plaintiff's motion to remand (Docket Entry 17) be denied. Furthermore, the court will grant Penske's motion for protective order (Docket Entry 31) and Mr. Bruce's motion for protective order (Docket Entry 33).

## I.    BACKGROUND

On August 17, 2015, pro se Plaintiff filed a complaint asserting claims against Defendants in the Superior Court in Rowan County, North Carolina. (Petition for Removal, Docket Entry 1, Ex. 1.) Subsequently, Plaintiff filed an amended complaint. (Am. Compl.,

Docket Entry 2). On November 24, 2015, Defendants filed a petition to remove the case to federal court. (Docket Entry 1.) In the amended complaint, Plaintiff alleges that on or about April 21, 2008, Plaintiff entered into a contract with Penske to rent a moving truck. (Am. Compl. ¶ 12, Docket Entry 2.) The truck was rented through Mr. Bruce, an individual that owns and operates a business that packages and ships goods (hereinafter "the Packaging Store"). (*Id.* ¶¶ 3, 12.) According to Plaintiff, Mr. Bruce is an agent of Penske. (*Id.* ¶¶ 3, 4.) The truck was returned to Mr. Bruce on or about April 30, 2008. (*Id.* ¶ 12.) On May 5, 2008, Plaintiff and her husband made a $250 cash deposit to rent a truck a second time. (*Id.* ¶ 14.) According to Plaintiff, although she never touched the vehicle, Mr. Bruce requested that the vehicle be put in her name. (*Id.* ¶ 17.) On or about June 18, 2008, while operating the rental truck, Plaintiff's husband was arrested by the Greensboro Police after attempting to pawn a stolen lawnmower. (*Id.* ¶ 18.) The rental truck remained on the property of the pawn store. (*Id.*) On or about June 19, 2008, Plaintiff bailed her husband out of jail. (*Id.* ¶ 20.) Plaintiff's husband retrieved the truck and returned it to Mr. Bruce's store. (*Id.*) On or about June 20, 2008, Mr. Bruce contacted Plaintiff at her place of employment and requested that Plaintiff pay $3,000 for the truck rental fee. (*Id.* ¶ 21.) Plaintiff requested to see the bill before she paid the amount. (*Id.*) According to Plaintiff, Mr. Bruce refused to provide her with accounting information and threatened to call the police if she did not pay on that day. (*Id.*) Between June 20, 2008 and October 23, 2008, Mr. Bruce contacted the police and reported that Plaintiff stole the rental truck. (*Id.* ¶ 22.) On or about October 23, 2008, Plaintiff was informed by the human resources director at her place of employment that a police officer came to the college to inquire about Plaintiff's husband's involvement with the rental truck. (*Id.* ¶ 23.) The human

resources director performed a background check which revealed an outstanding warrant for Plaintiff's arrest for failing to appear in court. (*Id.* ¶¶ 23-24.) Plaintiff was suspended and eventually terminated. (*Id.* ¶¶ 25, 27.) On or about February 17, 2009, Plaintiff was arrested based on Mr. Bruce's witness statement alleging that Plaintiff stole the rental truck. (*Id.* ¶ 28.) Plaintiff posted bail the same day. (*Id.* ¶ 30.) Additionally, on the same day Plaintiff's husband contacted a representative of Penske requesting a copy of the rental agreement and bill. (*Id.* ¶ 31.) Plaintiff's husband's request was denied. (*Id.*) On February 19, 2009, Plaintiff contacted another Penske representative to obtain a copy of the bill. (*Id.* ¶ 33.) Ultimately, Plaintiff was not able to retrieve a copy of the bill. (*Id.* ¶ 33, 35.) On July 6, 2009, Plaintiff was indicted in Rowan County Superior Court for larceny. (*Id.* ¶ 38.) On August 14, 2014, Plaintiff's charge was dismissed. (*Id.* ¶ 44.)

## II.   DISCUSSION

### A. Removal

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441(a). Federal courts thus have original jurisdiction over primarily two types of cases: (1) those involving federal questions and (2) those involving diversity of citizenship. 28 U.S.C. § 1332(a). Removal jurisdiction is strictly construed against removal and in favor of remand. *Id.*; *see also Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F. Supp. 1098, 1102 (D.S.C. 1990) ("If federal jurisdiction is in doubt, such doubt must be resolved in favor of state court jurisdiction and the case remanded."); *Deutsche Bank Nat. Trust Co. v. Lovett,* C/A No. 3:12–1819–MBS–SVH, 2012 WL 7070324, at *3 (D.S.C. Aug. 24, 2012).

In assessing the propriety of removal, the rules for determining whether a controversy

3

"arises under" federal law, thus creating federal question jurisdiction, are well established. First, federal law must be an "essential" element of the plaintiff's cause of action. *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112 (1936). Next, the federal question which is the predicate for removal must be "presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475 (1998) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Gully,* 299 U.S. at 112–13 ("To bring a case within the [federal-question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action . . . and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal."). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). Additionally, the federal question raised must be a substantial one. *Hagans v. Levine,* 415 U.S. 528, 536 (1974). Finally, the party seeking removal bears the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir. 1994). Where a court lacks subject matter jurisdiction, "the court may enter a remand order *sua sponte.*" *Ellenburg v. Spartan Motors Chassis, Inc.,* 519 F.3d 192, 196 (4th Cir. 2008) (emphasis in original).

First, Plaintiff contends that the case should be remanded because the parties lack diversity of citizenship. (Pl. Mot. to Remand Br. at 14-15, Docket Entry 18.) To the contrary, Defendants argue that the court has federal question jurisdiction over the case. Pursuant to 28 U.S.C. § 1441, "a claim arising under the Constitution, laws, or treaties of the United States" can be removed to federal court. Here, removing Defendants incorrectly put "NOTICE OF

4

REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) [Federal Question]" in the title of their notice of removal. (Petition for Removal, Docket Entry 1.) Defendants clearly made an error in referring to 28 U.S.C. § 1441(b) rather than 28 U.S.C. § 1441(c). In paragraph 2 of the notice of removal, removing Defendants state "[a]s amended, this is now a civil rights action over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b)." (*Id.* ¶ 2.) This indicates that the removing Defendants were aware this court had jurisdiction because of Plaintiff's federal civil rights claim and simply failed to cite the correct statute.

Moreover, it is apparent that the case was properly removed to this court under federal question jurisdiction. Plaintiff concedes that "federal question jurisdiction arises pursuant to 42 U.S.C. § 1983." (Am. Compl. ¶ 7, Docket Entry 2.) Plaintiff also asserts claims under 42 U.S.C. § 1985. (*Id.* ¶¶ 73-76.) The case was properly removed because it concerns claims arising under federal question jurisdiction, therefore it should not be remanded for lack of diversity of citizenship.

Second, Plaintiff contends that the case should be remanded to state court because Defendants failed to attach all of the necessary process, pleadings, and orders to its notice of removal. (Pl. Mot. to Remand Br. at 10-13, Docket Entry 18.) Pursuant to 28 U.S.C. § 1446(a):

> A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). Here, Defendants attached the civil summons and complaint sent to the City of Salisbury, the City of Salisbury's answer to the complaint, the state court order granting

leave to amend the complaint, Plaintiff's amended complaint, and other documents that were not required. Plaintiff contends that the summons sent to Mark W. Shue, a defendant served in his individual and official capacity, was not attached.

"[T]he majority approach is that the defect is merely procedural and that this particular procedural defect may be cured." *Riggs v. Fling Irrigation, Inc.*, 535 F. Supp. 2d 572, 579 (W.D.N.C. 2008). "The Court sees no reason why this 'minor irregularity' should defeat Defendants' Notice of Removal and believes that to remand for this reason alone, when the parties and the Court now have all the pertinent filings, would indeed 'elevate form over substance." *Id.* at 579 (citing *Riehl v. National Mut. Ins. Co.,* 374 F.2d 739, 742 (7th Cir. 1967)); *see also McWilliams v. Broderick,* No. 1:11CV519 JCC, 2011 WL 2669969, at *3 (E.D. Va. July 7, 2011) (finding that the defendant's failure to include a copy of the summons when she filed her removal papers was trivial and did not unduly burden the court); *Tucker v. Thomas,* No. 5:10CV31, 2011 WL 1119661, at *5 (N.D.W. Va. Mar. 24, 2011)("[T]he defect in removal of not attaching state court papers is merely procedural and may be cured.") (internal quotations and citations omitted). Accordingly, the court is persuaded by the majority view of courts in the Fourth Circuit finding that remand based upon this procedural defect would be inappropriate. Further, Plaintiff has already cured the defect by attaching the summons served on Mr. Shue to her motion to remand. (Pl. Mot. to Remand Br., Docket Entry 18-5.)

Thirdly, Plaintiff contends that the removing Defendants failed to obtain written consent from co-Defendants prior to filing the notice of removal. Specifically, Plaintiff contends that "Defendant Bruce and Defendant Penske did not file their consent for this action to be removed to this Court." (Pl. Mot. to Remand Br. at 13, Docket Entry 18.) The

6

current removal statute does not address how a case involving multiple defendants is to be removed, or whether coordination among defendants is required. *See* 28 U.S.C. § 1446; *Mayo v. Bd. of Educ. of Prince George's Cty.*, 713 F.3d 735, 740-41 (4th Cir. 2013). The Fourth Circuit has held that "notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal." *Mayo,* 713 F.3d at 742. Here, the City of Salisbury and Mr. Shue removed the case from state court. (Petition for Removal ¶ 1, Docket Entry 1.) The notice of removal states that "Penske and Bruce, as the only other Defendants to this action, have expressly consented to removal." (*Id.* ¶ 4.) Thus, Defendants Penske and Bruce were not required to file a notice stating that they consented to removal.

Lastly, Plaintiff contends that the court should remand the case based on the doctrine of pendent claim jurisdiction. (Pl. Mot. to Remand Br. at 16-19, Docket Entry 18.) The common law concept of "pendent" jurisdiction was replaced with the statutory category of "supplemental" jurisdiction. *See, e.g., Dever v. Kelley*, No. 3:06-CV-392, 2007 WL 2286279, at *3 n.1 (S.D. Ohio Aug. 6, 2007); *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities*, 786 F. Supp. 1340, 1345 n.2 (N.D. Ill. 1992). To establish supplemental jurisdiction over a state law claim the court must find that the state claim arises out of the "same case or controversy" as the federal law claim. 28 U.S.C. § 1367(a). According to the Supreme Court, both state and federal claims must "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 165 (1997). The Fourth Circuit has reasoned that "whether the federal-law claims and state-law claims are part of the same case is determined by whether they derive from a common nucleus of operative fact and are such that a plaintiff

would ordinarily be expected to try them all in one judicial proceeding." *Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 615 (4th Cir. 2001) (internal quotations and citations omitted).

Here, the court has original jurisdiction over Plaintiff's federal law claims. The court also has supplemental jurisdiction over Plaintiff's state law claims because "they form part of the same case or controversy as the federal claim[s]." *De Los Santos v. Nieves*, No. 1:09CV00426, 2010 WL 2471894, at *2 (M.D.N.C. June 15, 2010); *SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*, 820 F. Supp. 2d 677, 692-93 (M.D.N.C. 2011) (finding that the court retained supplemental jurisdiction over the breach of contract counterclaim "because the breach of contract claim arises out of the same case or controversy"); *Evans v. Plantation Pipe Line Co.*, No. 1:01CV130, 2002 WL 855913, at *1 (M.D.N.C. Apr. 19, 2002) (finding federal jurisdiction for one claim and supplemental jurisdiction over the remaining state claims in an action regarding environmental damage to two adjacent tracts of land because all of the claims arose out of the same case or controversy). *Neal v. Flav-O-Rich, Inc.*, No. 2:95CV00679, 1996 WL 652759, at *3 (M.D.N.C. July 30, 1996) (exercising supplemental jurisdiction over the plaintiff's malicious prosecution claim "because [it] arise[s] out of the same case or controversy, or a common nucleus of operative fact") (internal citation and quotation omitted). The present case concerns a sequence of events that derive from a contract between Plaintiff, her husband and Mr. Bruce. (Am. Compl. ¶¶ 14-18, Docket Entry 2.) According to Plaintiff, Mr. Bruce allegedly contacted the police to report that Plaintiff stole the rental truck. (*Id.* ¶ 22.) All

claims derive from this set of common facts. Therefore, the court has supplemental jurisdiction over Plaintiff's state law claims.[1]

B. Mr. Bruce's Motion to Dismiss

Defendant Mr. Bruce moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis of the statute of limitations and for failure to state a claim. (Docket Entry 6.) Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570)). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations and citations omitted). A 12(b)(6)

---

[1] In addition, Plaintiff contends that she should be awarded attorney's fees for bringing the motion to remand. The court finds Plaintiff's motion to remand meritless. Therefore, her request for attorney's fees should be denied.

motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

Here, the statute of limitations has run with respect to the claims against Mr. Bruce. Plaintiff filed claims against Mr. Bruce for conspiring to interfere with civil rights in violation of 42 U.S.C. § 1985, violating the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and malicious prosecution. (Am. Compl. ¶¶ 53-69, 73-82, Docket Entry 2).

Concerning Plaintiff's first claim alleging a violation of § 1985, "it is well-established that federal courts should apply the state statute of limitations for personal injury actions in claims brought pursuant to the civil rights statutes." *McHam v. N. Carolina Mut. Life Ins. Co.*, No. 105CV01168, 2007 WL 1695914, at *2 (M.D.N.C. June 11, 2007), *aff'd*, 250 F. App'x 545 (4th Cir. 2007); *see also Yee v. Multnomah Cty.*, 24 F.3d 252 (9th Cir. 1994) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-68 (1985)) (reasoning that "42 U.S.C. § 1985(3) contains no statute of limitations). "In North Carolina, civil rights claims are subject to a three-year statute of limitations." *McHam v. N. Carolina Mut. Life Ins. Co.*, No. 105CV01168, 2007 WL 1695914, at *2 (M.D.N.C. June 11, 2007), *aff'd*, 250 F. App'x 545 (4th Cir. 2007). Although the court borrows the statute of limitations for a federal claim, federal law still governs the date of

accrual. *Hartquist v. Emerson Elec. Co.*, No. 1:11CV1067, 2016 WL 1312028, at *7 (M.D.N.C. Mar. 31, 2016); *Harris v. Pressley*, No. 1:10CV412, 2011 WL 9534413, at *3 (M.D.N.C. Mar. 23, 2011) (applying federal law to determine when the statute of limitations runs); *see also Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (noting that the federal district court "observed that even though the limitation period is borrowed from state law, the question of when a cause of action *accrues* under 42 U.S.C. § 1983 remains one of federal law").[2] "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim*, 64 F.3d at 955; *Hartquist*, 2016 WL 1312028, at *7; *Harris*, 2011 WL 9534413, at *3.

Here, Plaintiff contends that after she and Mr. Bruce had a disagreement regarding the amount of money Plaintiff owed for renting the truck, Mr. Bruce contacted the police and reported that Plaintiff stole the vehicle. (Am. Compl. ¶¶ 21-22, Docket Entry 2.) On October 23, 2008, a police officer came to Plaintiff's place of employment to inquire about the rental truck. (*Id.* ¶ 23.) Ultimately, Plaintiff was arrested by the police as a result of Mr. Bruce's witness statement and a criminal action was brought against her. (*Id.* ¶¶ 29, 38.) Viewing the facts in the amended complaint in the light most favorable to Plaintiff, these events occurred outside of the statute of limitations because Plaintiff's complaint was not filed until August 17, 2015. All of the events related to Mr. Bruce occurred on or before February 17, 2009, the date Plaintiff was arrested as a result of Mr. Bruce's witness statement. Accordingly, even if the statute of limitations did not begin to accrue until February 17, 2009, the last event alleged

---

[2] Both § 1983 and § 1985 claims borrow the applicable state law to determine the length of the statute of limitations. *McHam*, 2007 WL 1695914, at *2; Nasim, 64 F.3d at 955.

in the complaint pertaining to Mr. Bruce, Plaintiff was required to bring her § 1985 claim by August 17, 2012, for her claims to fall within the three year statute of limitations. *Clark v. Russell*, No. 1:11CV526, 2012 WL 601868, at *6 (M.D.N.C. Feb. 23, 2012), *subsequently aff'd*, 475 F. App'x 864 (4th Cir. 2012) (finding that the plaintiff's § 1985 and other claims were barred by the statutes of limitations because his action was brought ten years after the underlining events occurred and the longest applicable limitations period was four years); *McHam v. N. Carolina Mut. Life Ins. Co.*, No. 105CV01168, 2007 WL 1695914, at *2 (M.D.N.C. June 11, 2007), *aff'd*, 250 F. App'x 545 (4th Cir. 2007) (finding that the plaintiff's § 1985 claim against the defendants, was barred by the statute of limitations because the factual allegations allegedly occurred in 1992, but the plaintiff's case was not filed until 2005, well after the statute of limitations expired); *McPherson v. Highlander Rentals, Inc.*, No. 4:07-CV-162-F, 2008 WL 2149765, at *6 (E.D.N.C. May 21, 2008) (finding that the plaintiff's conspiracy, breach of contract and other claims were barred by the statute of limitations because the plaintiff possessed sufficient facts about the alleged harm done to him in 2002, but did not bring the action until 2007, well after the statute of limitations expired). Thus, Plaintiff's § 1983 claim against Mr. Bruce is barred by the statute of limitations.

Plaintiff also contends that the continuing violation doctrine applies to her § 1985 claim against Mr. Bruce. Plaintiff argues that Penske and Mr. Bruce withheld pertinent information that would exonerate Plaintiff of any charges. (Pl. Resp. to Mr. Bruce's Mot. to Dismiss, Docket Entry 23 at 4-9.) According to Plaintiff, this practice "occurred within the limitations period and continued with malicious intent to prosecute Plaintiff until the case was dismissed" in 2014. (*Id.*) A continuing violation occurs when there is "an ongoing policy or pattern of

12

violations rather than discrete acts." *Hartquist*, 2016 WL 1312028, at *7 (internal citations and quotations omitted); *Hill v. Hampstead Lester Morton Court Partners LP*, 581 Fed. App'x. 178, 181 (4th Cir. 2014) ("The continuing-violation doctrine applies to claims based upon a defendant's ongoing policy or pattern of discrimination rather than discrete acts of discrimination."). "[C]ontinual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." *Smith v. Noftle*, No. 1:13CV708, 2015 WL 3675740, at *6 (M.D.N.C. June 12, 2015); *Hartquist*, 2016 WL 1312028, at *7. If the continuing violation doctrine is implicated, the limitations period begins to run at the time of the last violation. *Hartquist*, 2016 WL 1312028, at *7.

Here, Mr. Bruce's failure to bring information forward regarding Plaintiff's innocence during the criminal proceedings "does not constitute an independently compensable injury; if anything, it may be characterized as an ill effect of an original violation that is insufficient to toll the statute of limitations."[3] *Spencer v. Town of Chapel Hill*, 290 F. Supp. 2d 655, 662 (M.D.N.C. 2003) (finding that a town's decision to not prosecute its police officers for illegally searching the plaintiff was only an ill effect of the initial act). *Hartquist*, 2016 WL 1312028 at *7 (finding the plaintiff's argument that each week the defendants failed to notify the plaintiff of his rights under a benefit plan was not applicable to the continuing violation theory); *Hill*, 581 Fed. App'x. at 181 (holding that the defendants' denial of the plaintiff's multiple requests for accommodations to access a town house did not constitute ongoing acts applicable to the continuing violation doctrine) *See also Printup v. Directro, Ohio Deprartment of Joba nd Family*, No.

---

[3] The court notes that in every case cited by Plaintiff to support her continuing violation argument, the court found that the continual violation doctrine did not apply. (Pl. Resp. to Mr. Bruce's Mot. to Dismiss, Docket Entry 23 at 4-6.)

15-3906, 2016 WL 3595726, at *7 (6th Cir. June 30, 2016) (finding the plaintiff's continued appearance on a child abuse and neglect registry was a continual ill effect of her alleged wrong initial designation as a child abuser); *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir. 1982) (per curiam) (court rejected plaintiff's argument that his continued incarceration from an allegedly false arrest constituted a continuing tort). Thus, the continuing violation doctrine does not apply to Plaintiff's § 1985 claim. [4]

Likewise, Plaintiff's second claim asserting that Mr. Bruce violated the UDTPA is also barred by the statute of limitations. According to the UDTPA, "[a]ny civil action brought under this Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." *Ada Liss Grp. (2003) Ltd. v. Sara Lee Corp.*, No. 1:06CV610, 2010 WL 4904666, at *5 (M.D.N.C. Nov. 24, 2010) (citing N.C. Gen. Stat. § 75–16.2)); *see also Ansley v. HealthMarkets, Inc.*, No. 5:08-CV-88-BR, 2011 WL 5903926, at *4 (E.D.N.C. Nov. 22, 2011) (stating that the plaintiff's "UDTPA claim is subject to a four-year statute of limitations"). "A claim under the UDTPA accrues when the alleged violation

---

[4] In her amended complaint, Plaintiff alleges that Mr. Bruce and the other Defendants continued to make accusations throughout the course of the criminal proceedings. (Am. Compl. ¶ 61, Docket Entry 2.) However, Mr. Bruce did not testify at the grand jury hearing. (Am. Compl. Docket Entry 2-1 Ex. 14.) Furthermore, Plaintiff acknowledges that Plaintiff filed a written request for discovery that was not answered by Mr. Bruce or Penske. (Am. Compl. ¶ 40, Docket Entry 2.) Additionally, there was no trial. Thus, it is not reasonable to assume that Mr. Bruce made false accusations throughout the criminal proceedings. *But see Southerland v. Bedwell*, No. 15-3117, 2016 WL 3004618, at *11 (C.D. Ill. May 24, 2016) (concluding that because the defendants "gave false testimony at the preliminary hearing in the [P]laintiff's criminal case and . . . continued or caused the criminal prosecution and failed to provide the plaintiff with exculpatory evidence during the criminal proceeding," the plaintiff's allegations "form[ed] the basis of a continuing violation"); *Starkey v. Birritteri*, No. CIV.A. 12-10988-RWZ, 2012 WL 5921044, at *3 (D. Mass. Nov. 27, 2012) (finding that because the defendant "remained involved in the investigation . . . and continued to provide false information and false testimony, thereby prolonging the plaintiff's prosecution," the plaintiff pled enough facts to support his continuing violation claim to survive a motion to dismiss).

occurs." *Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 553 (M.D.N.C. 2003), *aff'd sub nom. Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust*, 87 F. App'x 314 (4th Cir. 2004).

Here, Plaintiff contends that Mr. Bruce verbally agreed to reduce the truck rental rate, but recorded the normal rate for the transaction. (Am. Compl. ¶ 78, Docket Entry 2). Plaintiff also asserts that Mr. Bruce negotiated the lower rate for the truck knowing that it was impossible for him to honor the agreement. (*Id.*) Plaintiff further contends that she was forced to sign the rental agreement even though her information was already in the system. (*Id.*) Additionally, Plaintiff contends that Mr. Bruce demanded payment of $3,000 without producing any documentation. (Pl. Resp. to Mr. Bruce's Mot. to Dismiss, Docket Entry 23 at 7.) Plaintiff further contends that providing a false witness statement to the police, alleging that Plaintiff stole the rental truck, was a violation of the UDTPA. (*Id.* at 8-9.) As stated above, all of the events related to Mr. Bruce occurred on or before February 17, 2009, and fall outside of the three year statute of limitations because Plaintiff's complaint was not filed until August 17, 2015. *Phillips & Jordan, Inc. v. Bostic*, No. 11 CVS 53, 2012 WL 1970070, at *12 (N.C. Super. June 1, 2012) (finding that the plaintiff became aware of the facts giving rise to its claim in 2005, but did not bring its claim until 2011 which was more than 4 years after the statute of limitations begin to accrue); *Stony Point Hardware & Gen. Store, Inc. v. Peoples Bank*, No. COA10–1170, 2011 WL 3569967, at *9 (N.C. App. Aug. 16, 2011) (concluding that the plaintiffs' UDTPA must be dismissed because the claim accrued on April 29, 2003, and the plaintiffs did not file their claim until July 16, 2007, which was outside the four year statute of

15

limitations). Thus, Plaintiff's UDTPA claim with respect to Mr. Bruce is barred by the statute of limitations.

Moreover, the continual violation does not apply to Plaintiff's UDTPA claim. As stated above, it's clear that Penske's alleged failure to bring forth information that could exonerate Plaintiff is an ill effect of Penske's initial alleged illegal act. *Hill*, 581 Fed. App'x. at 181; *Spencer*, 290 F. Supp. 2d 655, 662; *Printup*, 2016 WL 3595726, at *7.

Lastly, Plaintiff's malicious prosecution claim against Mr. Bruce is also barred by the statute of limitations. There is a three year statute of limitations with respect to malicious prosecution claims. *Turner v. Thomas*, 235 N.C. App. 520, 525, 762 S.E.2d 252, 258 (2014) (stating that there is a three year statute of limitations for malicious prosecution claims); *In re Rodgers*, No. 09-09124-8-JRL, 2011 WL 5909216, at *4 (Bankr. E.D.N.C. July 7, 2011), *order vacated in part*, No. 09-09124-8-JRL, 2012 WL 3133797 (Bankr. E.D.N.C. Aug. 1, 2012); *Clary v. Nivens*, 12 N.C. App. 690, 691, 184 S.E.2d 374, 376 (1971). In his motion to dismiss, Mr. Bruce states that Plaintiff's "[a]mended [c]omplaint fails to state a claim upon which relief may be granted with respect to this Defendant including, and not limited to, the bar of the applicable statute of limitations." (Mr. Bruce's Mot. to Dismiss at 1, Docket Entry 10.) As stated above, all of the events related to Mr. Bruce occurred on or before February 17, 2009, and fall outside of the three year statute of limitations because Plaintiff's complaint was not filed until August 17, 2015. Therefore, Plaintiff's malicious prosecution claim with respect to Mr. Bruce should be dismissed.

C. Penske's Motion to Dismiss Plaintiff's

Penske contends that the statute of limitations has run against Plaintiff's claim for conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985, and UDTPA claim. (Penske's Mot. to Dismiss Br. at 6-8, Docket Entry 7.) Penske further contends that Plaintiff's malicious prosecution claim should be dismissed because Plaintiff failed to allege facts showing that Penske made false statements that led to Plaintiff's prosecution. (*Id.* at 11-12.)

First, as discussed above, the statute of limitations for § 1985 claims is three years. *McHam,* 2007 WL 1695914, at *2. The cause of action accrues when the plaintiff possess sufficient facts about the harm done to reasonably trigger the plaintiff's cause of action. *Nasim,* 64 F.3d at 955. Here, Plaintiff alleges that on February 17, 2009, she was arrested after Mr. Bruce falsely reported that she had stolen a moving truck that was in Plaintiff's possession under a valid contractual agreement. (Am. Compl. ¶ 29, Docket Entry 2.) After Plaintiff posted bail her husband contacted Chris, a representative of Penske, to obtain a copy of the rental agreement and bill. (*Id.* ¶¶ 30-31.) According to Plaintiff, Chris acknowledged that he had the agreement, but after being asked several times, he failed to send the information. (*Id.* ¶ 31.) Subsequently, on February 19, 2009, Plaintiff contacted Penske and spoke to a representative named Nick Percival. (*Id.* ¶ 33.) Mr. Percival "responded that the truck had not been reported stolen." (*Id.*) Mr. Percival agreed to give Plaintiff a copy of the rental agreement, but later failed to do so reasoning that Plaintiff owed $3,000 and that he did not want to get in the middle of the dispute. (*Id.* ¶¶ 33, 35.) Plaintiff argues that Penske, through Mr. Percival, had knowledge that Plaintiff did not steal the rental truck and "conspired [with

other Defendants] to interfere with Plaintiff's civil rights." (*Id.* ¶ 35.) On July 6, 2009, Plaintiff was indicted by a grand jury for allegedly stealing the rental truck. (*Id.* ¶ 38.)

Viewing the facts in the light most favorable to Plaintiff, the facts alleged in the complaint occurred outside of the statute of limitations because Plaintiff's complaint was not filed until August 17, 2015. All of the events occurred on or before March 9, 2009. Accordingly, even if the statute of limitations did not accrue until March 9, 2009, the date of the last event alleged in the complaint, Plaintiff was required to bring her § 1985 claim by March 9, 2012, for her claim to fall within the three year statute of limitations. *Clark*, 2012 WL 601868, at *6; *McPherson*, 2008 WL 2149765, at *6; *McHam*, 2007 WL 1695914, at *2. Even if Plaintiff correctly asserts that Mr. Bruce is an agent of Penske, the statute of limitations regarding Mr. Bruce's conduct accrued, at the very latest, on February 17, 2009, when Plaintiff was arrested by the police as a result of Mr. Bruce's witness statement. (*Id.* ¶ 29.) Thus, Plaintiff's § 1983 claim against Penske is barred by the statute of limitations.

Plaintiff also contends that the continuing violation doctrine applies to her § 1985 claim because Penske failed to bring forth information that would exonerate Plaintiff. (Pl. Resp. to Penske's Mot. to Dismiss at 3, Docket Entry 21.) As previously stated above, Penske's failure to bring forth information of Mr. Bruce's innocence is an ill effect of Mr. Bruce's alleged initial statement given to the police. *Hill*, 581 Fed. App'x. at 181; *Spencer*, 290 F. Supp. 2d 655, 662; *Printup*, 2016 WL 3595726, at *7. Thus, the continuing violation doctrine does not apply to Plaintiff's § 1985 claim against Penske.

Next, Plaintiff's second claim, asserting that Penske violated the UDTPA, is barred by the statute of limitations. As mentioned above, a UDTPA claim shall be brought within four

18

years of the cause of action. *Ada Liss Grp.*, No. 1:06CV610, 2010 WL 4904666, at *5. The cause of action accrued, at the latest, on March 9, 2009. Plaintiff's complaint was not filed until August 17, 2015, over two years after the statute of limitations had run. *Bostic*, 2012 WL 1970070, at *12; *Peoples Bank*, 2011 WL 3569967, at *9. Thus, Plaintiff's UDTPA claim against Penske is barred by the statute of limitations. Similarly, Plaintiff's contention that withholding information that could exonerate Penske constituted a continuing violation to bring the UDTPA claim within the statute of limitations is unpersuasive under North Carolina law because it is an ill effect of the original violation. *Hill*, 581 Fed. App'x. at 181; *Spencer*, 290 F. Supp. 2d 655, 662. Thus, the continuing violation doctrine does not apply to Plaintiff's state claims against Penske.

Next, Plaintiff's third claim against Penske asserting malicious prosecution should be dismissed as well. Penske contends that Plaintiff failed to allege facts showing that Penske made false statements that led to Plaintiff's prosecution. (Penske's Mot. to Dismiss Br. at 11-12, Docket Entry 7.) To the contrary, Plaintiff contends that Mr. Bruce is an agent of Penske. (Am. Compl. ¶¶ 3-4, Docket Entry 2). Thus, according to Plaintiff, Penske is liable under the doctrine of *respondeat superior* for Mr. Bruce's malicious prosecution of Plaintiff. (Pl. Resp. to Penske's Mot. to Dismiss at 16-20, Docket Entry 21.) The doctrine of *respondeat superior* applies to agency relationships. *Estes v. Comstock Homebuilding Companies, Inc.*, 195 N.C. App. 536, 540, 673 S.E.2d 399, 402 (2009). According to

> the doctrine of *respondeat superior,* a principal is liable for the torts of its agent which are committed within the scope of the agent's authority, when the principal retains the right to control and direct the manner in which the agent works. Of course, *respondeat superior* does not apply unless an agency relationship of this nature exists.

*Holleman v. Aiken*, 193 N.C. App. 484, 504, 668 S.E.2d 579, 592 (2008) (citing *Phillips v. Restaurant Mgmt. of Carolina, L.P.,* 146 N.C. App. 203, 216, 552 S.E.2d 686, 695 (2001) *disc. review denied,* 355 N.C. 214, 560 S.E.2d 132 (2002)) (emphasis in original); *Green v. Freeman*, 233 N.C. App. 109, 112-13, 756 S.E.2d 368, 373 (2014). In some instances a *respondeat superior* claim can be dismissed against a principal. "The general rule in North Carolina is that a judgment on the merits in favor of the agent precludes any action against the principal where, as here, the principal's liability is purely derivative." *Metts v. New Hanover Reg'l Med. Ctr.*, 221 N.C. App. 669, 729 S.E.2d 128 (2012); *Draughon v. Harnett County Bd. of Educ.,* 166 N.C. App. 464, 469–70, 602 S.E.2d 721, 726 (2004).

Here, the court concludes that Plaintiff's malicious prosecution claim against the alleged agent, Mr. Bruce, is barred by the statute of limitations. Therefore, the claim is not dismissed on the merits. Inexplicably, Penske specifically raises the statute of limitations defense as to all of Plaintiff's claims except for the malicious prosecution claim. As reasoned by the Fourth Circuit the statute of limitations

> primarily serves only defendants by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise. Any interest that a court generally possesses in the enforcement of a statute of limitations defense pales in significance compared to those interests implicated by failure to prosecute, abuse of process, and res judicata. And such an interest ordinarily falls short of that necessary to outweigh the benefits derived from adhering to the adversarial process, and requiring that a defendant either raise the defense of statute of limitations or waive its protection.

*Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006). Thus, Penske waived the statute of limitations defense with respect to Plaintiff's malicious prosecution claim by failing to raise the defense in its responsive pleading. *Williams v. Studivent*, No. 1:09CV414, 2009 WL 3837627,

at *1 (M.D.N.C. Nov. 16, 2009) (finding that while the event alleged in the complaint arguably occurred outside the statute of limitations, the moving defendants waived the statute of limitations defense by not pursuing the argument); *see also McLaughlin v. McGee Bros. Co.*, 681 F. Supp. 1117, 1136 (W.D.N.C. 1988), *aff'd sub nom. Brock v. Wendell's Woodwork, Inc.*, 867 F.2d 196 (4th Cir. 1989) ("Defendants have failed to plead the statute of limitations as an affirmative defense as required . . . thus waiv[ing] the defense").

Penske's waiver of the statute of limitations made the malicious prosecution claim the only remaining claim for the court's consideration. While such a nuanced set of circumstances have not been addressed by North Carolina courts, the Seventh Circuit has concluded, in a case applying Louisiana law, that once a claim is dismissed against an employee, the plaintiff can only bring a vicarious liability claim against the employer if the claim is not time barred. *See Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 520 (5th Cir. 2009) ("Louisiana law allows a plaintiff to bring suit against an employer when the employee is completely dismissed, even when the employer's sole basis for liability is vicarious liability as long as the suit is not prescribed"). At least two other districts have found that when claims against an agent are barred by the statute of limitations, the claims against the principal are dismissed as well. *See Buchmeier v. City of Berwyn*, No. 14 C 6750, 2015 WL 4498742, at *5, 7 (N.D. Ill. July 23, 2015) (concluding that because the claims against the police officer (employee) were barred by the statute of limitations, the claims against the City (employer) were barred as well); *Preis v. Lexington Ins. Co.*, 508 F. Supp. 2d 1061, 1078 (S.D. Ala. 2007), *aff'd*, 279 F. App'x 940 (11th Cir. 2008) (concluding that the principal could not be held liable because the statute of

limitations expired before the plaintiffs filed the lawsuit against the agents).[5] Thus, because Plaintiff's malicious prosecution claim pertaining to Mr. Bruce is barred by the statute of limitations, the court recommends that Plaintiff's malicious prosecution claim against Penske be dismissed as well.

Even if the court determined that dismissal of the malicious prosecution claim against Mr. Bruce (alleged agent) does not require the claim against Penske (alleged principal) to be dismissed, Plaintiff's *respondeat superior* claim is meritless. Viewing Plaintiff's allegations in the amended complaint, Plaintiff has not alleged sufficient facts to state a claim for relief that is plausible on its face against Penske. Assuming arguendo Plaintiff has alleged sufficient factual allegations that Mr. Bruce is Penske's "agent," there is insufficient factual allegations that Mr. Bruce was acting within the scope of any principal/ agency relationship with Penske pursuant to the theory of *respondeat superior.* Under North Carolina law, "if the agent, of his own notion, undertakes to set in motion the machinery of the criminal law to avenge an imagined wrong against his employer, such act does not impose liability upon the employer, unless such employer authorized or ratified the conduct of the employee." *Lamm v. Charles Stores Co.*, 201 N.C. 134, 36, 159 S.E. 444, 46 (1931)).

---

[5] The court notes that jurisdictions have reached inconsistent results regarding whether a claim can be brought against the principal once the case is dismissed against the agent because the statute of limitations has expired. *Compare ISP Chemicals LLC v. Dutchland, Inc.*, No. 5:08-CV-153, 2011 WL 2690029, at *3 (W.D. Ky. July 6, 2011) ("under Kentucky law, the principals can be held vicariously liable for the agent's conduct even if the statute of limitations bars [the plaintiff's] claim against the agent himself") (internal citations and quotations omitted), *and Cobbin by Cobbin v. City & Cty. of Denver*, 735 P.2d 214, 217 (Colo. App. 1987)("If, as in the instant case, the agent is dismissed on procedural grounds, the dismissal does not bar the plaintiffs' claim against the principal based on respondeat superior.") *with Buchmeier*, 2015 WL 4498742, at *7, *and Preis*, 508 F. Supp. 2d at 1078. In light of the circumstances in this case, the court finds the view that the case should be dismissed against the principal more persuasive.

Plaintiff asserts in the amended complaint that Mr. Percival, the Penske representative, stated "that if a truck was not returned as per the rental agreement the company would only file a complaint for failure to return rental property." (Am. Compl. ¶ 33, Docket Entry 2.) At the very least, this statement suggests that Penske did not ratify Mr. Bruce's decision to file a witness statement alleging that the rental truck was stolen. *Roland v. Ry. Exp. Agency*, 201 N.C. 815, 161 S.E. 483, 483 (1931) (internal quotation omitted) (concluding that there was no evidence "tending to show that [the defendants'] agent was authorized by defendants to procure the warrant on which plaintiff was arrested and prosecuted or that defendants ratified the action of their agent in procuring the warrant and prosecuting the plaintiff"); *Minter v. S. Express Co.*, 153 N.C. 507, 69 S.E. 497, 498 (1910) (concluding that a night watchman and agent of the defendant did not act within the scope of his employment in providing a statement to the police that the plaintiff stole from the defendant which ultimately lead to a warrant being issued to search the plaintiff's premises).

Furthermore, pursuant to North Carolina law "[t]here is a marked distinction between . . . an arrest caused by an agent for the purpose of protecting the rights or interests of his master--that is, to protect property to prevent its theft, or to recover it back--and an arrest . . . . caused for the purpose of punishing an offender for an act already done." *Pridgen v. Carolina Coach Co.*, 229 N.C. 46, 51, 47 S.E.2d 609, 613 (1948). Here, Plaintiff contends that because she did not pay Mr. Bruce the $3,000 rental fee, he contacted the police and reported that Plaintiff "stole the Penske truck . . . [and that] . . . Mr. Bruce fabricated the larceny charge providing false information [about] the truck in question." (Am. Compl. ¶ 22, Docket Entry 2.) Based on Plaintiff's amended complaint, most likely, Mr. Bruce actions were done for the

23

purpose of punishing Plaintiff rather than preventing the theft or to recover the rental truck because it was already in Mr. Bruce's possession. Plaintiff's own allegations suggest that "[a]ccusatory statements were made by [Mr.] Bruce with reckless disregard to the truth. The accusations were made absent probable cause, in bad faith, maliciously, with resentment, and clear intent to harm Plaintiff . . . ." (*Id.* ¶ 62.) Thus, the undersigned finds that Mr. Bruce's act of providing false information to police officers in order to obtain an arrest warrant against Plaintiff was outside the scope of Mr. Bruce's authority or scope of the alleged agency relationship. Accordingly, Plaintiff's claim that Penske is liable under the doctrine of *respondeat superior* for Mr. Bruce's malicious prosecution of Plaintiff is without merit.

D. Motions for Protective Order

Mr. Bruce and Penske each filed a motion for a protective order (Docket Entries 31, 33) to strike interrogatories and requests for production of documents sent to them by Plaintiff. According to L.R. 16.1, a case brought by pro se litigants "shall be governed by a scheduling order entered by the Court after an initial pretrial conference, unless the Court determines, in its discretion, that no conference is necessary." L.R. 16.1. The scheduling order has not been entered in this case because Mr. Bruce and Penske's motions to dismiss are pending. Therefore, the court grants Mr. Bruce and Penske's motions for protective orders (Docket Entries 31, 33) to the extent that their answers to Plaintiff's request for production and interrogatories shall be stayed until after the pretrial conference. The pretrial conference will be set once the court disposes of the motions to dismiss.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Penske's motion to dismiss (Docket Entry 6) be **GRANTED** and that Mr. Bruce's motion to dismiss (Docket Entry 10) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion to remand to state court (Docket Entry 17) be **DENIED**.

**IT IS FURTHER ORDERED** that Penske and Mr. Bruce's motions for protective orders (Docket Entries 31, 33) are **GRANTED** to the extent that their answers to Plaintiff's request for production and interrogatories shall be stayed until after the pretrial conference.

_____
Joe L. Webster
United States Magistrate Judge

August 25, 2016
Durham, North Carolina