**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| LISA A. GREGORY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MONTE BRUCE, MONTE BRUCE d/b/a | ) |
| THE PACKAGING STORE, PENSKE | ) |
| TRUCK LEASING CO., LP, and MARK | ) 1:15CV996 |
| W. SHUE, Individual and in His Official | ) |
| Capacity as a Police Officer of the | ) |
| Salisbury Police Department, and CITY | ) |
| OF SALISBURY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment by

Defendants City of Salisbury ("the City") and Mark W. Shue [Doc. #56] and a

Motion for Summary Judgment by Defendants Monte Bruce and Monte Bruce d/b/a

The Packaging Store [Doc. #60].  For the reasons explained below, both motions

are granted.

I.

The following facts are undisputed.  On June 5, 2008, pro se Plaintiff Lisa

A. Gregory signed an agreement with Bruce, the owner of The Packaging Store in

Salisbury, North Carolina, to rent a Penske 26-foot SAD Medium Van for one day.

(Local Household Rental Agreement [Doc. #68-17]; Decl. of Monte D. Bruce ¶¶ 3-

6 (Oct. 12, 2017) [Doc. #60-1]; Dep. of Lisa A. Gregory 39:5-25 (June 12, 2017)

[Doc. #60-2[1]]; Decl. of Lisa A. Gregory ¶¶ 6, 7 [Docs. #70 (Dec. 8, 2017), #74 (Dec. 16, 2017)[2]].)  Gregory's husband requested a one-day extension to June 7, which Bruce allowed, but that day came and went without the truck's return. (Decl. of Bruce ¶ 7; see Dep. of Gregory 70:7-11, 22-23, 77:9-13, 77:24-78:3, 78:14-23, 81:5-82:13 (admitting possession of the truck as late as June 18, June 23, and the early morning of June 24) [Doc. #60-2].)  After having unsuccessfully attempted to contact Gregory about the truck, Bruce reported it stolen to the City's police department on June 18. (Decl. of Bruce ¶¶ 9, 10; see also Decl. of Gregory ¶ 9 [Doc. #74].)

That day, Shue responded to The Packaging Store where he met Bruce who explained that, on June 5, he had rented a 26-foot Penske truck to Jay and Lisa Gregory, the latter of whom had signed the rental receipt, for one day that was extended for another day at Jay's request. (Decl. of Mark W. Shue ¶ 2 (Oct. 4, 2017) [Doc. #56-1].)  Bruce described the truck as a 2007 International, model 4300 panel truck, valued at $50,000. (Id.)  After June 7 came and went, and Bruce had not been able to reach Gregory, he concluded the truck had been stolen and called the police. (Id. ¶ 3.)

---

[1] Shue and the City and Bruce attached different excerpts of Gregory's deposition to their respective motions, (compare [Doc. #56-2] with [Doc. #60-2]).  Therefore, the specific docket entry of the excerpts cited here are noted.

[2] Gregory submitted declarations in opposition to each of the motions for summary judgment.  In some respects, the declarations are identical.  In others, they are not.  Therefore, the specific docket entry of the particular declaration cited is noted.

Having no reason to doubt Bruce's credibility, Shue entered the truck's license plate and VIN into the NCIC database as stolen and completed an incident report. (Id. ¶ 4; see Reporting Officer Narrative (stating the same general information as in Shue's Declaration) [Doc. #66-1].)  That same day, Shue attempted to speak with and locate Gregory to no avail. (Decl. of Shue ¶ 4.) Meanwhile, Bruce was able to reach her at her work telephone number and informed her that he had contacted the police and that the truck needed to be returned. (Decl. of Bruce ¶ 12; see also Dep. of Gregory 79:2-12 [Doc. #60-2].)

Long after June 7, the truck was returned to The Packaging Store. (See Dep. of Gregory 70:7-11, 22-23, 77:9-13, 77:24-78:3, 78:14-23, 81:5-82:13 (admitting possession of the truck as late as June 18, June 23, and the early morning of June 24) [Doc. #60-2]; Decl. of Lisa A. Gregory ¶ 10 [Doc. #70], ¶ 11 [Doc. #74] (admitting returning the truck "[o]n or after June 18"); Decl. of Bruce ¶ 13 (stating that "[o]n or about July 5, 2008, the truck was found on my lot"); Local Household Invoice #16622880 (noting return date and time as "07/05/08" at "09:59 AM") [Doc. #68-17].)  Bruce then called Shue to report the truck's return. (See Decl. of Bruce ¶ 15 (explaining that after finding the truck on his lot on or about July 5, he "thereafter notified the Salisbury Police Dispatch of the truck's return").)  After receiving notice from Bruce that the truck was returned overnight, Shue removed it from the NCIC database and issued a supplemental case report noting that the truck had been returned. (See Decl. of Shue ¶ 5; Case Suppl. Report (July 11, 2008) (reflecting Bruce's report of the truck's return,

Shue's removal of the truck from the NCIC database, and an Incident/Investigative Report updated to show that the stolen truck had been recovered).) Sometime after the truck was returned, Bruce called Gregory at work and demanded that she pay $3,000 or he was going to call the police. (Dep. of Gregory 82:19-25 [Doc. #60-2].) There is no evidence that he did. (See id. 122:13-123:4.)

Shue conducted no further investigation, and the matter lay dormant until February 2009 when one of Shue's supervisors asked if he had ever presented the case to a magistrate for possible criminal charges. (Decl. of Shue ¶ 6.) When Shue responded that he had not, he was instructed to do so. (Id.) He pulled the police reports and went before a magistrate at which time he testified under oath about the initial call, what he learned from Bruce, his own unsuccessful efforts to contact Gregory, and the truck's return several weeks later. (Id.) The magistrate issued arrest warrants for Lisa and Jay Gregory for felony larceny in violation of N.C. General Statute § 14-72(a). (Id.; Warrant for Arrest (Feb. 5, 2009) [Doc. #2-1, Ex. 5].) Shue left the warrants on his sergeant's desk, (Decl. of Shue ¶ 6), after which Gregory was arrested on February 17, 2009, and released on bond, (Decl. of Gregory ¶ 18 [Doc. #70], ¶ 13 [Doc. #74]). Shue did not participate in either of the Gregorys' arrests. (Decl. of Shue ¶ 6.)

Bruce and Shue were then subpoenaed to appear before the grand jury. (See M.W. Shue Subpoena (02/23/09) [Doc. #70-2], (03/26/09) [Doc. #70-3], (06/22/09) [Doc. #70-4]; Monte Bruce Subpoena (02/23/09) and accompanying letter (02/20/09) [Docs. #74-3, 74-4], (03/26/09) [Doc. #74-6], (05/07/09) [Doc.

#74-7]; Decl. of Bruce ¶ 17; Decl. of Shue ¶ 7.) Bruce never appeared before a magistrate or testified before the grand jury, (Decl. of Bruce ¶ 17), but he did submit a Victim Impact Statement in March 2009 identifying the truck as having been stolen, but noting that it was recovered, and that his company had suffered a loss of $2,995.09, plus his investigative time and research, as a result, (id. ¶ 18; Victim Impact Statement [Doc. #74-5]). In July 2009, Shue testified before the grand jury to the exact same information he reported to the magistrate, after which he heard nothing about the case until the filing of the instant action. (Decl. of Shue ¶ 7.) Gregory was indicted on July 6, 2009, for a violation of N.C. General Statute § 14-72, a class H felony. (Indictment (July 6, 2009) [Doc. #2-1, Ex. 14].) Over five years later, on August 14, 2014, the charge against Gregory was dismissed. (See Dismissal (Aug. 14, 2014) [Doc. #2-1, Ex. 20].)

On November 12, 2015, Gregory instituted this action against Bruce, Penske Truck Leasing Co., LP ("Penske"), Shue, and the City. The Court granted Penske's motion to dismiss all three claims against it and partially granted Bruce's motion, dismissing two claims against him. (See Order (Mar. 16, 2017) [Doc. #45] (adopting in part Recommendation [Doc. #40]).) Shue, the City, and Bruce have now filed motions for summary judgment on all remaining claims – as against Shue and the City: unlawful arrest (Count I), malicious prosecution (Count II), and violation of due process rights and equal access to justice (Count IV) all in violation of 42 U.S.C. § 1983, malicious prosecution in violation of North Carolina law (Count III), and conspiracy to interfere with civil rights in violation of 42 U.S.C.

5

§ 1985 (Count V), and as against Bruce:  malicious prosecution in violation of North Carolina law (Count III).  Throughout her responses to the motions for summary judgment, Gregory refers to her then-pending Motions to Compel that she filed after Defendants moved for summary judgment. (See Pl.'s Resp. in Opp'n [Docs. #69, 73].)  She believed that, if her motion were granted, she would obtain documentary and testimonial evidence to support her claims and oppose the summary judgment motions.  However, her Motion to Compel was denied. (See Order (Jan. 22, 2018) [Doc. #80].)

II.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' Fed. R. Civ. P. 56(a)."  Groves v. Commc'n Workers of Am., 815 F.3d 177, 181 (4th Cir. 2016).  The moving party bears the initial burden of establishing "the basis for its motion[] and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)[3]).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[3] Rule 56(c) was amended effective December 1, 2010, but the substance of the rule did not change.

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A dispute is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. <u>Id.</u> at 248. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. <u>Id.</u>

III.

Shue and the City first argue that Count I is time-barred. (Mem. of Law in Supp. of Mot. for Summ. J. at 6-7 [Doc. #59].) In Count I, pursuant to 42 U.S.C. § 1983, Gregory alleges that Shue and the City violated her Fourth and Fourteenth Amendment rights "by fabricating false evidence to manufacture probable cause, reckless conduct and with malicious intent to harm and injure [her], seizing and arresting [her] with no probable cause". (Am. Compl. ¶ 46 [Doc. #2].)

Gregory essentially alleges that her arrest warrant was not supported by probable cause, because Shue fabricated the evidence he presented to the magistrate who issued the warrant. "At common law, allegations that a warrantless arrest . . . was not supported by probable cause advanced a claim of false arrest . . . ; [h]owever, allegations that an arrest made pursuant to a warrant was not supported by probable cause . . . are analogous to the common-law tort of malicious prosecution." <u>Brooks v. City of Winston-Salem, N.C.</u>, 85 F.3d 178, 181-82 (4th Cir. 1996). Here, Gregory was arrested pursuant to the warrant that the magistrate issued based upon Shue's testimony, which Gregory alleges was replete with fabricated evidence to manufacture probable cause. These allegations align

with malicious prosecution, rather than false arrest, and are addressed below, see infra § IV.

Even if Gregory's allegations were properly considered allegations of a false arrest, such a claim would be time-barred. Courts look to state personal injury law to determine the statute of limitations for a § 1983 claim. Wallace v. Kato, 549 U.S. 384, 387 (2007). In North Carolina, the applicable statute of limitations for personal injury actions is three years. N.C. Gen. Stat. § 1-52(5). However, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace, 549 U.S. at 388. A § 1983 claim for false arrest accrues when "the claimant becomes detained pursuant to legal process." Id. at 397. Here, the magistrate issued an arrest warrant for Gregory on February 5, 2009, pursuant to which she was arrested on February 17, 2009. Yet, she filed the instant action alleging false arrest in August 2015, well beyond the three year limitations period.

IV.

Next, Shue and the City challenge Counts II and III, alleging malicious prosecution in violation of 42 U.S.C. § 1983 and North Carolina law, respectively. Gregory alleges that Shue maliciously commenced a criminal proceeding against her without probable cause and that she prevailed when charges were dismissed. (Am. Compl. ¶¶ 50, 57, 59-61.) The City is alleged to have allowed officers to engage in a pattern or practice of conduct that deprives persons of their

constitutional rights, because the City fails to supervise and monitor officers' actions and improperly trains officers. (Id. ¶¶ 52, 57, 59-61.)

A.

As the Fourth Circuit has explained, "A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Evans v. Chalmers, 703 F.3d 636, 647 (2012) (internal quotations omitted). A plaintiff must show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Id. Shue and the City argue that Gregory has not shown a lack of probable cause or that the proceedings terminated in her favor, and elsewhere in their brief, they note that "a prosecutor's independent decision to seek an indictment breaks the causal chain unless the officer has misled or unduly pressured the prosecutor." (Mem. of Law in Supp. of Mot. for Summ. J. at 12-13, 15.)

Probable cause is an objective standard that "turns on two factors: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (internal quotations omitted). A court is to "examine[] the facts within the knowledge" of the officer "to determine whether they provide a probability on which reasonable and prudent persons would act". Id. Here, Gregory provides no evidence to dispute that, on June 18, 2008, when Bruce

9

reported the truck stolen, he told Shue that the Gregorys had entered into an agreement to rent the truck on June 5 for one day, he had approved a one-day extension, but that, as of June 18, the truck had not yet been returned, and he had not been able to reach Gregory.

Based on this information, and having no reason to doubt Bruce's credibility, Shue had probable cause to do what he did next – he entered the truck's VIN into the NCIC database as stolen and completed an incident report stating the same and noting plans to obtain felony warrants for larceny of the vehicle. (See N.C. Gen. Stat. § 14-72(a) (larceny of property); State v. Allen, 667 S.E.2d 295, 299 (N.C. Ct. App. 2008) ("The essential elements of a larceny are that the defendant[] (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of [the] property permanently."); In re Glen, 326 S.E.2d 646, 647 (N.C. Ct. App. 1985) ("One with custody may commit larceny where she subsequently forms the intent to, and does, convert such property.").)

Gregory attempts to create genuine disputes of material facts when she takes issue with the date on which Shue learned of her place of employment and, therefore, where to try to locate her. Shue attests that, on June 18 after he met with Bruce and reported the truck stolen, he visited Livingstone College where Bruce believed Gregory was employed but Shue was told she was not working. (Decl. of Shue ¶ 4.) Gregory relies upon her handwritten notes on a calendar and her time sheets for that month to show that she was, indeed, working that day,

(Calendar & Time Sheet [Docs. #70-1), and further cites Shue's supplemental case report dated July 11 stating that Gregory might be employed at Livingstone College as evidence that he could not have known on June 18 to look for her at the school.  Not only does this evidence not create a genuine dispute of material fact, but Gregory attests elsewhere that she left work mid-day on June 18 because of the Greensboro Police Department's detention of her husband, (see Pl.'s Resp. in Opp'n at 11 [Doc. #73] (citing to Decl. of Gregory ¶ 8 [Doc. #74])).

After Shue's June 18 report of a stolen vehicle and personal attempts to locate Gregory, "the probable cause determinations of third parties were the proximate cause of [Gregory's] arrest" and indictment. Mead v. Shaw, ___ F. App'x ___, No. 17-1677, 2018 WL 366968, at *2 (4th Cir. Jan. 11, 2018) (unpublished).  Constitutional torts "require a demonstration of both but-for and proximate cause" such that "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." Evans, 703 F.3d at 647.  "Such intervening acts of other participants in the criminal justice system insulate a police officer from liability" unless the officer "lied to or misled the prosecutor," "failed to disclose exculpatory evidence to the prosecutor," "or unduly pressured the prosecutor to seek the indictment". Id. at 647-48 (internal quotations and citations omitted).

Months after last working on the case, Shue presented the case to the magistrate in February 2009 at the instruction of his supervisor.  Not only does

11

Gregory fail to provide any evidence to dispute Shue's contention that he reported to the magistrate the initial call, what he learned from Bruce, his own unsuccessful attempts to locate Gregory, and the return of the truck weeks later, but she admitted in her deposition that she has "no evidence" that Shue told the magistrate anything different from what Bruce told him in June, (Dep. of Gregory 173:9-14 [Doc. #56-2]).  She does, however, cite to her arrest warrant as support for her argument that Shue "omit[ted] that the truck was returned undamaged" to "sway the Magistrate in order to obtain an arrest warrant". (Pl.'s Resp. in Opp'n at 8 [Doc. #60].)  Nothing in the warrant reflects what Shue said to the magistrate, other that the magistrate believed it supported probable cause to arrest Gregory for larceny, nor does the warrant create a genuine dispute about what Shue has stated that he presented to the magistrate.

Under subpoena, Shue testified before the grand jury in July 2009 to the same thing he told the magistrate, after which Gregory was indicted on July 6, 2009, for felony larceny.  As before, Gregory has provided no evidence to dispute Shue's declaration of his grand jury testimony.  Furthermore, she admitted in her deposition that she has no evidence that Shue misled or unduly pressured the District Attorney to seek the indictment, that Shue told the grand jury anything different than what he told the magistrate, or that he fabricated evidence. (Id. at 173:20-22, 176:23-177:6.)  Gregory does contest Shue's statement that, after he testified before the magistrate in February 2009, his next involvement with the case was in July 2009 when he was subpoenaed to testify before the grand jury,

because Shue was subpoenaed to appear and testify before the July. (Decl. of Gregory ¶ 22, 25.)  However, this does not contradict Shue's statement about his involvement in the case or otherwise create a genuine dispute of material fact.

Because there is no evidence that Shue lied to or misled the prosecutor, failed to disclose exculpatory evidence, or unduly pressured the prosecutor, the intervening acts of the magistrate, prosecutor, and grand jury insulate him from liability. See Mead, 2018 WL 366968, at *2 (affirming summary judgment on the malicious prosecution claim where the intervening acts of the magistrate and grand juries insulated the defendants from liability and the plaintiff offered no evidence that defendants misled the grand jury or proffered false or misleading evidence). Because no reasonable juror could find that Shue lacked probable cause or, under federal law, caused the alleged violation of Gregory's rights, summary judgment on Count II as to Shue is granted.

Summary judgment is also appropriate for Gregory's claim against the City as there is no evidence of any "unconstitutional 'custom or usage,' i.e., a widespread practice of a particular unconstitutional method," that could serve as the basis for liability. Randall v. Prince George's Cty., Md., 302 F.3d 188, 210 (4th Cir. 2002) (citing Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987)). See also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Gregory argues that Shue's statement that he did not conduct any further investigation after removing the truck from the NCIC databased on July 11 evidences the City's "flawed policy in that officers assigned to investigative cases are not properly trained to conduct competent investigations." (Pl.'s Resp. in Opp'n at 5.)  Without more, Gregory's argument on this point is not enough to survive summary judgment.  Therefore, summary judgment is granted on Count II as to the City.

B.

North Carolina's tort of malicious prosecution is similar to that under federal law.  "To prove a claim for malicious prosecution [under North Carolina law], a plaintiff must establish four elements: (1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." Nguyen v. Burgerbusters, Inc., 642 S.E.2d 502, 505 (N.C. Ct. App. 2007) (international quotations omitted).  Shue and the City argue that Gregory cannot satisfy elements two through four. (Mem. of Law in Supp. of Mot. for Summ. J. at 7-12.)  The probable cause element is addressed first because it is determinative.

Probable cause is "the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution." Best v. Duke Univ., 448 S.E.2d 506, 510 (N.C. 1994).  For the reasons explained in § IV.A., Shue had probable cause to take the actions that he

did.  "The presence of probable cause necessarily defeats [a] plaintiff's claim" for malicious prosecution.  Adams v. City of Raleigh, 782 S.E.2d 108, 113 (N.C. Ct. App. 2016) (citing Martin v. Parker, 563 S.E.2d 216, 218 (N.C. Ct. App. 2002) (finding that "the presence of probable cause necessarily defeats plaintiff's claim" despite there being "disputed issues of fact . . . regarding who initiated the prosecution")).  In addition, as above, there is no evidence from which a reasonable jury could find the City liable.  Accordingly, summary judgment is granted on Count III as to both Shue and the City.

V.

Shue and the City next challenge Gregory's claim against them for a violation of her due process rights and equal access to justice under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  Gregory alleges that Shue violated or caused to be violated Gregory's due process rights "by manufacturing probable cause and submitting . . . evidence to the Grand Jury for the purpose of influencing the verdict" and that the City has a policy of allowing officers to engage in a pattern or practice of conduct that violates constitutional rights, lacks supervision and monitoring of officers, and improperly trains officers. (Am. Compl. ¶¶ 71, 72.)

"The Fourteenth Amendment protects 'against deprivations of liberty accomplished without due process of law.'" Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)).  There is a due process "right not to be deprived of liberty as a result of the fabrication of

evidence by a government officer acting in an investigating capacity." Id.  A plaintiff must show fabrication of evidence and that the loss of liberty resulted from that fabrication. Id.

At her deposition, Gregory was asked if she had "any evidence that [Shue] fabricated anything".  She testified, "I have no evidence." (Dep. of Gregory 173:15-22 [Doc. #56-2].)  As noted above, Gregory also admitted that she has no evidence that Shue told the magistrate anything different from what Bruce told Shue in June 2008, that Shue told the grand jury anything different than what he told the magistrate, or that Shue misled the prosecutor to seek the indictment. Not only is there no showing that Shue fabricated evidence, but there is no evidence that the City has a policy of permitting officers to do so.  Summary judgment on Count IV as to both Shue and the City is granted.

VI.

Finally, Shue and the City challenge Gregory's claim that they conspired to interfere with her civil rights "by obstructing justice, fabricating false statements to manufacture probable cause, [and] depriving Plaintiff of her rights or privileges" in violation of 42  U.S.C. § 1985. (Am. Compl. ¶ 75.)  A plaintiff bringing an action under § 1985 must show

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)).  To prove a § 1985 conspiracy, a plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the [plaintiff's] constitutional rights." Simmons, 47 F.3d at 1377.  "[T]he law is well settled that merely conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action, are insufficient to support a section 1985(3) action against a motion for summary judgment". Id. at 1376.

Here, there is no evidence that Shue and the City conspired with each other or anyone else to violate Gregory's constitutional rights, nor is there evidence that they were motivated by any animus towards Gregory, much less specific class-based, invidiously discriminatory animus. See McDaniel v. Bailey, ___ F. App'x ___, No. 17-2117, 2018 WL 777168, at *2 (4th Cir. Feb. 8, 2018) (unpublished) (finding the plaintiff's use of the words "conspiring" and "conspiracy" throughout her complaint insufficient to state a § 1985 civil conspiracy claim because she failed "to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made" or that the defendants were motivated by class-based animus).  Accordingly, summary judgment on Count V as to both Shue and the City is granted.

VII.

Shue also argues that he is entitled to summary judgment on the basis of qualified immunity from liability for Gregory's federal claims and public official immunity from liability for her state claim. (Mem. of Law in Supp. of Mot. for Summ. J. at 16-17.)  Because it is determined that Shue did not violate any of Gregory's constitutional rights or otherwise commit a tortious act against her, there is no need to determine whether immunity shields him from liability.

VIII.

Next, Bruce and Bruce d/b/a The Packaging Store move for summary judgment on the only remaining claim against them – malicious prosecution under North Carolina law.  As noted above, a plaintiff must establish "(1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." Nguyen, 642 S.E.2d at 505.

When a private individual reports to law enforcement information of an alleged crime "that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false." N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 742 S.E.2d 781, 787 (N.C. 2013) (quoting Restatement (Second) of Torts § 653, Cmt. (g)).  "The exercise of the officer's discretion makes the initiation of the prosecution his own

and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." Id. (quoting Restatement (Second) of Torts § 653, Cmt. (g)). "If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information." Underwood v. Ordonez, 781 S.E.2d 718, at *5 (N.C. Ct. App. Jan. 19, 2016) (Table) (unpublished) (quoting Restatement (Second) of Torts § 653, Cmt. (g)).

At the time Bruce reported to Shue that the truck was stolen, he knew that the Gregorys had rented the truck on June 5 for one day, he had granted Jay Gregory's requested one-day extension, that June 7 came and went without the truck's return, he had unsuccessfully attempted to contact Gregory, and, finally on June 18, had resolved that the truck had been stolen – all of which he told Shue.

Gregory attempts to create disputes of material fact by maintaining that she and her husband remained in contact with Bruce, Penske's in-store representative, and Penske itself to extend the rental agreement verbally. (Decl. of Gregory ¶ 7 [Doc. #74].) On June 18, while still in possession of and operating the truck, her husband was detained by the Greensboro Police Department. (Id. ¶ 8.) According to Gregory, a detective contacted Penske "to confirm the validity of the rental agreement". (Id.) Gregory attests that, on February 19, 2009, she contacted Penske and spoke with Nick Percival who told her that the truck had not been reported stolen. (Id. ¶ 17.) She also cites to the Rowan County District Attorney's August 13, 2014, letter to Bruce in which he states that he called Penske and

learned that Bruce had not reported the truck stolen. (See Letter from Thomas M. King to Bruce (Aug. 13, 2014) [Doc. # 66-4].) In addition, she argues that her previous rental of a truck from Bruce, which was verbally extended and paid in full, supports her contention that this rental agreement was also verbally extended and that Bruce would have known the truck was not stolen. (See Local Household Lease Invoice #16094891 (Apr. 21, 2008) [Doc. #2-1].)

In addition, she attests that her husband was the person with whom Bruce had negotiated the rental contract and who was the sole driver of the truck. (Decl. of Gregory ¶¶ 5-7 [Doc. #74].) She takes issue with Bruce's attempts to contact her because she contends that she gave him no contact information when signing the rental agreement and the telephone number that Bruce had on file was for her previous residence from which she had moved in April 2008. (Id. ¶¶ 4, 35.) She also notes the different dates that she, Shue, and Bruce either contend or noted that the truck was returned to The Packaging Store. In addition, she suggests that Bruce's statement that he did not testify before a magistrate or grand jury or at a trial is contradicted by his having been subpoenaed to appear and testify before the grand jury and having submitted a Victim Impact Statement. (See id. ¶¶ 18, 19, 22, 24.)

None of this evidence creates a genuine dispute of material fact. First, communications that Gregory's husband may have had with Bruce about extending the rental agreement, or the Greensboro Police Department's and the District Attorney's communications with Penske about the validity of the rental agreement

or whether the truck had been reported stolen, and Percival's statement to Gregory about the truck's not having been reported stolen are hearsay. "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Md. Highways Contractors Ass'n, Inc. v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991).

Next, Gregory's own statement that she "remained in contact" with Bruce, the in-store Penske representative, and Penske "to verbally extend the valid rental" is also insufficient to create a genuine dispute of material fact. Gregory provides no specificity in her statement, which does nothing more than confirm that Bruce verbally agreed to extend the contract, which he admits he did – for one day. There is no evidence before the Court from which a reasonable jury could find that Bruce would have reported the truck stolen on June 18 when, in fact, he knew he had extended the rental agreement to at least that date.

The remainder of Gregory's factual arguments also fail to create a genuine dispute of any material fact. Simply because the Gregorys had previously rented a Penske truck from Bruce, verbally extended the rental, and paid in full does not mean that Bruce could not have believed that, as of June 18, the truck rented on June 5 – and not yet returned – had been stolen. Furthermore, it is undisputed that Gregory signed the rental agreement for the Penske truck that her husband then used, that Bruce unsuccessfully attempted to contact her prior to reporting the truck stolen, and that the truck was returned to The Packaging Store at least

as late as June 18.  Finally, Bruce's having been subpoenaed and having submitted a Victim Impact Statement create no genuine dispute of any material fact.

Because the admissible evidence before the Court shows that Bruce believed the truck was stolen when he reported it as such on June 18 and Shue and his supervisor subsequently exercised their discretion in initiating criminal proceedings against Gregory, Bruce is protected from liability for malicious prosecution.  In addition, the admissible facts also show that Bruce had probable cause to believe that the truck was stolen as of June 18, which also defeats the malicious prosecution claim against Bruce.  Summary judgment on Count III as to Bruce and Bruce d/b/a The Packaging Store is granted.

IX.

For the reasons stated herein, IT IS HEREBY ORDERED that the City of Salisbury's and Mark W. Shue's Motion for Summary Judgment [Doc. #56] be GRANTED, that Monte Bruce's and Monte Bruce d/b/a The Packaging Store's Motion for Summary Judgment [Doc. #60] be GRANTED, and that this action be DISMISSED.

This the 9th day of March, 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge